

FILED

2006 Jul-07  AM 10:40
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ALABAMA SOUTHERN DIVISION

—————————————————————————————

| | | |
|---|---|---|
| **GREG GOLDSMITH,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO.** |
| | ) | **CV-03-C-1018** |
| **BAGBY ELEVATOR COMPANY, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

—————————————————————————————

## DEFENDANT'S POST-TRIAL (RENEWED) MOTION FOR JUDGMENT AS A MATTER OF LAW OR, IN THE ALTERNATIVE, FOR NEW TRIAL OR REMITTITUR AND MEMORANDUM IN SUPPORT

—————————————————————————————

NOW COMES Defendant, Bagby Elevator Company, Inc. ("Bagby"), and pursuant to Federal Rules of Civil Procedure, Rules 50(b), 59(a) and 59(e), moves the Court to grant a judgment as a matter of law ("JML") on the claims of wrongful discharge and retaliation, or alternatively grant a new trial on these issues, or as a last alternative, enter an order requiring Plaintiff to remit all or a substantial part of all damage awards and as grounds therefore, says as follows:

## JUDGMENT AS A MATTER OF LAW

1.  The evidence was insufficient as a matter of law to establish the
    elements of a racially hostile environment at Bagby that would entitle
    Plaintiff to a jury trial and a JML was due to be entered in favor of
    Bagby at the summary judgment stage.  The competent evidence
    failed to show that Plaintiff was subjected to an environment that was
    permeated with racial hostility that was objectively severe and
    pervasive.  The few comments to which Plaintiff testified were spoken
    over an 18-month period and were not frequent. The Court erred to
    reversal in failing to enter a JML for Bagby at the summary judgment
    stage of the case.  *See, e.g., Gupta v. Florida Board of Regents*, 212
    F.3d 571, 582 (11th Cir. 2000); *Faragher v. City of Boca Raton,* 524
    U.S. 775 (1998); *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742
    (1998).

2.  The evidence was insufficient as a matter of law to show or prove that
    race was a factor in Plaintiff's wrongful discharge claim and does not
    support the jury verdict for Plaintiff on that claim.  The Court erred to
    reversal in submitting the claim to the jury since there was no causal
    connection between protected conduct and the decision to terminate
    Plaintiff's employment.  A reasonable jury could not have, on the

evidence submitted, formed a belief that race discrimination motivated Bagby to terminate Plaintiff, so the jury was swayed by illegal evidence referenced herein. A JML is due to be entered on this claim.

3. The evidence was insufficient as a matter of law to dispute, or show as pretextual, Bagby's legitimate business reason for Plaintiff's dismissal – his failure to sign the dispute resolution agreement. Plaintiff testified that he would be working at Bagby today if he had signed the dispute resolution agreement, so race was admittedly not a factor in his discharge. The Court erred to reversal in submitting the wrongful discharge claim to the jury. A JML is due to be entered on this claim.

4. A JML is due to be entered in favor of Bagby and against Plaintiff on the retaliatory discharge claim because Plaintiff's employment ended for a legitimate, non-retaliatory reason – Plaintiff's refusal to sign the dispute resolution agreement that Bagby presented to all of its non-union employees. The Court erred to reversal in submitting this claim to the jury because an employer requiring an employee to sign a dispute resolution agreement is not protected conduct from which a claim for retaliation can arise. *See Weeks v. Harden Manufacturing*

*Corp.,* 291 F.3d 1307, 1316-17 (11th Cir. 2002); *EEOC v. Luce,*

*Forward, Hamilton, & Scripps,* 303 F.3d 994, 1005 (9th Cir. 2002).

5.  Assuming *arguendo*, a retaliation claim could have been maintained

by Plaintiff, the evidence was insufficient as a matter of law to submit

the retaliation claim to the jury since Bagby articulated an

unequivocal legitimate business reason for Plaintiff's dismissal, which

was his failure to sign the dispute resolution agreement.  Since

Plaintiff failed to produce any competent evidence that this reason

was not true, or that illegal retaliation was the real reason, the Court

erred to reversal in submitting this claim to the jury.  *Brooks v.*

*County Comm'n of Jeff. County*, 446 F.3d 1160,1163 (11th Cir. 2006)

citing *St. Mary's Honor Ctr. V. Hicks*, 509 U.S. 502, 515, 113 S. Ct.

2742 (1993); *Steger v. General Electric Co.*, 318 F.3d 1066,1078 (11th

Cir. 2003) citing *Ross v. Rhodes Furniture, Inc.*, 146 F.3d 1286,1290

(11th Cir. 1998).

6.  The requisite evidence of a causal connection between the protected

act of filing the EEOC Charge and the dismissal of Plaintiff eight

months later was insufficient as a matter of law to warrant

submission to the jury, or support the verdict for Plaintiff on the

retaliatory discharge claim.  The Court erred to reversal in submitting

this claim to the jury. *See Hammons v. George C. Wallace State Community College,* 2006 WL 655061 (11th Cir.)(time gap of 5 months between protected expression and adverse employment action did not constitute causal connection); *Embry v. Callahan Eye Fd. Hosp.,* 2005 WL 2009046 (11th Cir.)(time gap of 9 months did not constitute causal connection).

7. A JML is due to be entered on the retaliatory discharge claim because of the decision, or "same decision" defense. Even if Bagby made a unilateral decision to terminate Plaintiff's employment, the unconverted evidence showed that Bagby did so because of Plaintiff's refusal to sign the dispute resolution agreement, regardless of whether an unlawful factor played a role in the decision. There was insufficient evidence for a reasonable juror to find that any motivation other than the refusal to sign the dispute resolution agreement resulted in the dismissal of Plaintiff. The Court erred to reversal in submitting this claim to the jury. *See Steger,* 318 F.3d at 1076.

8. A JML on the punitive damages award is due to be entered in favor of Bagby and against Plaintiff because Plaintiff failed to present sufficient evidence that Bagby engaged in a discriminatory practice

against Plaintiff with malice, or with reckless indifference to Plaintiff's federally protected rights.  Plaintiff utterly failed to show that the decision-maker (Arthur Steber) knew that his actions in dismissing Plaintiff from employment violated his constitutionally protected rights.  The Court erred to reversal in submitting the claim for punitive damages to the jury.  *See Kolstad v. American Dental Ass'n.*, 527 U.S. 526, 544 (1999); *Harris v. L&L Wings, Inc.*, 132 F.3d 978, 983 (4th Cir. 1997) (Plaintiff must present heightened showing of culpable state of mind).

9.   A JML on the punitive damages award is due to be entered in favor of Bagby and against Plaintiff because the undisputed evidence at trial was that Bagby acted in good faith to comply with the federal laws under which Plaintiff claimed protection by having policies against discrimination of which Plaintiff and other employees were aware. *Id.*  The existence of anti-discrimination and reporting policies was admitted by Plaintiff.  The demand for punitive damages should not have been submitted to the jury since Plaintiff acknowledged he knew about the policies against discrimination created and followed by Bagby, and failed to prove these policies did not comply with federal

law.  The Court erred to reversal in submitting the punitive damages

claim to the jury.

## NEW TRIAL

10.   A new trial should be granted on the wrongful discharge and

retaliation claims (the only claims addressed under Rule 59) because

Bagby was substantially prejudiced and irreparably harmed by the

Court's abuse of discretion in granting the Motion for Leave to file,

without consent and over the objection of Bagby, the Plaintiff's

Amendment to Conform to the Evidence, which purported to add a

pattern and practice claim to the lawsuit the day before the trial

started and before any evidence or testimony was presented.  Even

though the Plaintiff did not actually file the Amended Complaint, and

the Court did not ultimately instruct the jury on this claim, evidence

was allowed under the guise of advancing this claim during the course

of the trial over Bagby's objection.  A new trial is mandated in order to

rectify the manifest injustice that flowed to Bagby.

11.   A new trial should be granted on the wrongful discharge and

retaliation claims because Bagby was irreparably harmed and

suffered irremediable prejudice and the jury was unlawfully

influenced by the Court allowing Plaintiff, over objection, to introduce

testimony by and about other African-American employees of Bagby, ostensibly as part of a pattern and practice of discrimination. The testimony was allowed by the Court under the purported pattern and practice amendment, which was not filed, and during the jury charge conference, the Court dropped the pattern and practice claim and ruled that, in any event, this testimony was admissible under Fed. R. Evid. Rule 406 which Plaintiff did not rely upon in introducing the evidence and which Bagby never had an opportunity to respond to.

12. A new trial should be granted on the wrongful discharge and retaliation claims because Bagby was irreparably harmed and suffered irremediable prejudice, and the jury was unlawfully influenced as a result of the Court allowing Plaintiff, over relevancy and trustworthiness objection, to introduce into evidence the EEOC cause Determination issued on Plaintiff's EEOC Charge. The introduction of this evidence was unfair to Bagby and constituted an abuse of discretion because the EEOC Determination was summarily created and contained no facts upon which the legal conclusions cited therein were based. Defendant was left helpless to even argue, never mind cross-examine the bare legal conclusions contained therein. *See Barfield v. Orange County*, 911 F.2d 644,650 (11th Cir. 1990).

13.   A new trial should be granted on the wrongful discharge and
      retaliation claims because Bagby was irreparably harmed and
      suffered irremediable prejudice, and the jury was unlawfully
      influenced as a result of the Court allowing Plaintiff, over relevancy
      and trustworthiness objection, to present the testimony of a former
      African-American employee of Bagby, LaTrinda Peoples, whose
      employment was terminated by a different decision-maker and for a
      reason unrelated to the reason Plaintiff was discharged.  The evidence
      was not relevant, or material, had no probative value to the claims
      advanced by Plaintiff; this evidence created unfair prejudice against
      Defendant in the minds of the jury, resulting in manifest injustice.
      *Id*., *See Steger*, *supra,* 318 F.3d at 1079.

14.   A new trial should be granted on the wrongful discharge and
      retaliation claims because Bagby was irreparably harmed and
      suffered irremediable prejudice, and the jury was unlawfully
      influenced as a result of the Court allowing Plaintiff, over relevancy
      and trustworthiness objection, to call Curley Thomas, a former
      employee of Bagby who is African-American to testify in support of
      the pattern and practice allegation, over objection, about a racial
      comment made to him by Ron Farley while employed at Bagby, but

after work hours.  The two men went into a store and Ron Farley told the clerk he had bought himself a "slave."  Plaintiff was not present when the comment was said and it was never told to Plaintiff while he was employed at Bagby.  Curley Thomas gave his notice to quit Bagby, citing this comment and the other one he had overheard, but was told to go ahead and leave before working out his notice.  He left in March 2001, over one year before Plaintiff was terminated from employment.  The testimony however, was allowed by the Court for the purpose of advancing the suggestion that there was a pattern or practice of Bagby with regard to all African-American employees.  This testimony was improperly admitted and allowed, resulting in manifest injustice warranting a new trial.

15.  A new trial should be granted on the wrongful discharge and retaliation claims because Bagby was irreparably harmed and suffered irremediable prejudice, and the jury was unlawfully influenced as a result of the Court allowing Plaintiff, over relevancy and trustworthiness objection, to introduce into evidence the EEOC cause Determination of LaTrinda Peoples since same was summarily created and contained no facts therein upon which the legal conclusions were based.  Defendant was left helpless to even argue,

never mind cross-examine the bare legal conclusion contained therein.  *See Barfield, supra,* at 911 F.2d at 650; *Steger*, *supra,* 318 F.3d at 1079.  The cause Determination was not relevant to Plaintiff's claim, but was offered to suggest Bagby was guilty of race discrimination with respect to every African-American employee of which Plaintiff was one.

16.   A new trial should be granted on the wrongful discharge and retaliation claims because Bagby was irreparably harmed and suffered irremediable prejudice, and the jury was unlawfully influenced as a result of the Court allowing Plaintiff, over relevancy and trustworthiness objection, to solicit testimony about the EEOC cause Determination and other information about the employment termination of a former African-American employee of Bagby, Anthony Jemison, who did not testify.  The discussion and testimony of the fact a document communicated a cause finding by the EEOC was unfair and left Defendant helpless to argue about or cross-examine the finding.  *Id.*; *Steger*, *supra,* 318 F.3d at 1079.  Bagby suffered manifest injustice from the admission of this testimony which was used by Plaintiff to argue that Bagby discriminated against every African-American employee of which Plaintiff was one.

17.   A new trial should be granted on the wrongful discharge and
retaliation claims because Bagby was irreparably harmed and
suffered irremediable prejudice, and the jury was unlawfully
influenced as a result of the Court allowing Plaintiff, over objection, to
articulate to a witness called by Plaintiff, leading questions accusing
corporate officers, Arthur and Hunter Bagby, of using the word
"nigger," neither of whom were involved in any conduct alleged by
Plaintiff which formed the basis of the hostile environment claim, nor
made any employment decisions regarding Plaintiff, or others
mentioned in the lawsuit.  Bagby contends the jury was inflamed to
grave prejudice by these questions that had no probative value to
Plaintiff's claims and while the questions were denied, they were yet
repeated with vitriol as facts, over objection, in Plaintiff's Closing
Argument and Rebuttal.  The allowance of these questions and
argument, in the first place, and further refusal to give a curative
instruction was an abuse of discretion amounting to manifest
injustice.

18.   A new trial should be granted on the compensatory damages awarded
for the verdict on the wrongful discharge and retaliation claims
because Bagby was irreparably harmed and suffered irremediable

prejudice, and the jury was unlawfully influenced as a result of the Court allowing Plaintiff, over objection, to introduce the calculation of damages prepared by Plaintiff's attorneys as notice to Bagby under Rule 26 and the Pretrial Order.  Instead of introducing the elements of the damages claimed by testimony, Plaintiff was allowed to introduce a summary calculation through Plaintiff that Plaintiff could not himself explain and that was admittedly incorrect.  Thereafter, over objection, Plaintiff's attorney was allowed, through leading questions, to essentially testify to the contents of the calculation.

19.   A new trial should be granted on the wrongful discharge and retaliation claims because Bagby was irreparably harmed and suffered irremediable prejudice, and the jury was unlawfully influenced as a result of the Court sustaining an objection during Bagby's Closing Argument claiming there was only one reprimand of manager Ron Farley (who admitted once to using the "N-word"), as opposed to two such reprimands, as suggested by Plaintiff.  The Court's act of sustaining this objection to proper argument on the evidence unfairly prejudiced Bagby in that it led the jury to believe the Court had found *as a fact* and endorsed Plaintiff's contention that Ron Farley was reprimanded twice.  Because there was only evidence

on one reprimand, the Court suggested spoliation by Bagby.  Clearly the Court abused its discretion in sustaining the objection which contributed to a finding of punitive damages.

20.   A new trial should be granted on the punitive damages awarded on the wrongful discharge and retaliation claims because Bagby was irreparably harmed and suffered irremediable prejudice, when the Plaintiff failed to argue, or even mention punitive damages in Closing, but did so and asked for more than "six figures" in Rebuttal Argument, which resulted in manifest injustice to Bagby.  Bagby responded to Plaintiff's Closing, which did not mention punitive damages, and was thus prevented from responding with argument on the merits of punitive damages following Plaintiff's Rebuttal.  Bagby made timely objection to the argument for punitive damages in the Rebuttal Argument, and the Court abused its discretion in overruling the objection and subsequently submitting the punitive damages demand to the jury, thereby warranting a new trial.

21.   A new trial should be granted on the wrongful discharge and retaliation claims because Bagby was irreparably harmed and suffered irremediable prejudice, and the jury was unlawfully influenced as a result of the Court allowing Plaintiff, over objection, to

14

call the Court's Courtroom Deputy to the stand in order to testify to an irrelevant comment she allegedly heard made by the CEO and Chairman of Bagby in the witness room when she was bringing a Bagby employee-witness to the stand.  The comment allegedly was: "Go get'um champ."  By allowing the testimony, the Court abused its discretion in allowing the Plaintiff to unfairly target the CEO and Chairman of the Defendant and suggest with the testimony that he had done something wrong in offering encouragement to the employee.  Moreover, this testimony was allowed to go forward after the employee testified he could not remember what if anything, was said.  The Courtroom Deputy was not on the Witness List and her testimony did not serve to advance the claims of Plaintiff, but only to cast dispersions on Defendant.  *See generally Parker v. Gladden*, 385 U.S. 363 (1966).

22.   A new trial should be granted on the wrongful discharge and retaliation claims because Bagby was irreparably harmed and suffered irremediable prejudice, and the jury was unlawfully influenced as a result of the Court allowing Plaintiff, over objection, to solicit testimony about a corporation closely-held by Bagby's CEO and Chairman and the former President, Arthur Steber, which owns the

real estate of two of Bagby's offices and has no financial connection to Bagby, except as a landlord, but allowed the jury to speculate that there was some wrongdoing which could have contributed to the large punitive damage award. The wrongdoing could have been the mere fact that the real estate the company offices sat on was not owned by the corporation. The irrelevancy of the testimony even suggests some irregularity. Moreover, this testimony allowed the jury to speculate about the wealth of Arthur Bagby through this corporation, which was not competent evidence for the claims presented and further prejudiced the defendant Bagby by association. The Court abused its discretion in allowing this testimony.

## ARGUMENT

### I. INTRODUCTION

On May 3, 2003, Plaintiff sued Bagby alleging that he was discharged from his employment on the basis of his race and in retaliation for filing a charge of discrimination with the EEOC in violation of Title VII of the Civil Rights Act of 1964 and 42 USC § 1981. The Complaint also contained claims for race discrimination with respect to promotion and a racially hostile work environment under Title VII and § 1981. A jury trial yielded a $554,321.18 verdict for Plaintiff, which consists of $27,160.59 for lost

wages, $27,160.59 for mental anguish and $500,000.00 as punitive damages.  By Special Interrogatories to the Jury, the Jury found in favor of Plaintiff only on his wrongful termination and retaliation claims.  The Jury found in favor of Bagby on Plaintiff's promotion claim and, while determining there was a hostile environment, found no damage had been sustained by Plaintiff.  After the jury rendered its verdict, the Court entered judgment for the amounts stated in favor of Plaintiff and against Defendant on June 26, 2006.  (Doc. 94).

The original opinion on the summary judgment motion in this case issued on December 2, 2005, by Magistrate Judge Robert A. Armstrong granted a JML to Bagby on all claims.  (Doc 35).  The case was appealed and Judge Clemon reversed the Magistrate's Opinion.  (Doc. 45).  Thereafter, Judge Clemon was required to recuse himself and the case was returned to the wheel and assigned to this Court.

The present post-trial motion for judgment as a matter of law renews contentions that Bagby made in its Motion For Summary Judgment and in its Rule 50 motions at trial for JML, which Bagby made at the close of Plaintiff's case-in-chief and again at the close of all of the evidence.[1]  Bagby

---

[1] The grounds for JML are the same as asserted, except for the pattern or practice claim which was dismissed.

is entitled to JML because Plaintiff failed to adduce evidence as to certain elements of his wrongful termination and retaliation claims.

The racially hostile environment should not have been submitted to the jury because the evidence was not sufficient to amount to a pervasive and severe racially hostile work environment.

With respect to Plaintiff's race-based wrongful termination claim, Plaintiff did not present evidence that any white employee refused to sign the dispute resolution agreement and was not fired and failed to present evidence that Bagby's reason for his termination was pretext for unlawful discrimination based on Plaintiff's race.

With respect to Plaintiff's retaliation claim, the insistence that employees sign a dispute resolution agreement is not protected conduct from which a retaliation claim can arise. Additionally, Plaintiff failed to prove a causal connection between the filing of his first EEOC charge and the termination of his employment. Indeed, Plaintiff's own testimony was that he would not have been terminated but for his refusal to sign the dispute resolution agreement. Even if Plaintiff has established that his race or protected conduct were considered by Bagby with respect to his termination, which he cannot, Bagby must prevail under the "same decision defense." Additionally, and in the alternative, Bagby is due judgment as a

matter of law with respect to Plaintiff's award for punitive damages because Plaintiff has failed to prove malice or reckless indifference to Plaintiff's federally protected rights; Bagby has established the good faith elements set forth in *Kolstad*; and Plaintiff failed to argue or mention a measure of punitive damages in his Closing, but first mentioned the measure of damages in his Rebuttal, foreclosing Bagby's ability to respond, and causing Bagby substantial prejudice. Additionally, the ratio of compensatory to punitive damages is too high when compared to the conduct reflected by the competent evidence.

Bagby' alternative motion for new trial addresses multiple and interlaced errors with regard to the presentation of the case to the jury, errors which tainted the jury's verdict as to the claims upon which Plaintiff prevailed at trial. The specific points of error are delineated above.

The alternative motion for remittitur addresses the excessive punitive damage award as to the claims upon which Plaintiff prevailed at trial. Bagby asks the Court to order Plaintiff to accept a substantial remittitur of this award or proceed with a new trial as to the claims upon which Plaintiff prevailed at trial. In the alternative, the jury's award of $500,000 in punitive damages is not supported by the evidence and, in any event, is excessive under controlling federal law.

## II.  MOTION FOR JUDGMENT AS A MATTER OF LAW

A.  <u>Plaintiff's Racial Hostile Environment Claim</u>

There was insufficient evidence as a matter of law to support Plaintiff's racially hostile environment claim since the elements of that claim were not proven beyond Plaintiff's race.  The evidence did not even amount to a weak *prima facie* case.  The Court erred to reversal in failing to summarily enter a judgment as a matter of law on this claim.

To establish a prima facie case of a racially hostile work environment, Plaintiff must show (1) that he belongs to a protected group, (2) that he was subjected to unwelcome harassment; (3) that the harassment was based upon his race, (4) that the harassment was sufficiently severe or pervasive as to alter the terms and conditions of his employment and (5) a basis for holding Bagby responsible under a theory of vicarious or direct liability. *See, e.g., Faragher v. City of Boca Raton,* 524 U.S. 775 (1998); *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742 (1998); *Gupta v. Florida Board of Regents*, 212 F.3d 571, 582 (11th Cir. 2000).

As noted in *Gupta*, there is a subjective and objective component to the severe and pervasive element of a Title VII harassment claim.  *Gupta*, 212 F.3d at 583.  "[T]he objective severity of harassment should be judged from the perspective of  a reasonable person in the plaintiff's position,

considering 'all the circumstances.'" *Mendoza*, 195 F.3d at 1246 (quoting *Oncale*, 118 S. Ct. at 1003 (quoting *Harris*, 510 U.S. at 231)).  The Supreme Court has stated that the "conduct must be extreme to amount to a change in the terms and conditions of employment . . . ." *Faragher*, 118 S. Ct. at 2284 (emphasis added).  "'Title VII is not a federal guarantee of refinement and sophistication in the workplace – it prohibits only harassing behavior that is so severe or pervasive as to render the workplace objectively hostile or abusive.'" *Blevins v. Helig-Meyers Corp.*, 52 F. Supp. 2d 1337, 1350-51 (M.D. Ala. 1998) (Thompson, J.) (quoting *Hartsell v. Duplex Prods., Inc.*, 123 F.3d 766, 773 (4th Cir. 1997)).  A hostile work environment is created "[w]hen the workplace is permeated with 'discriminatory intimidation, ridicule, and insult,' that is 'sufficiently severe or pervasive to alter the conditions *of the victim's employment* and create an abusive working environment . . . .'" *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (emphasis added) (quoting *Meritor Savings Bank*, 477 U.S. at 65, 67).  Isolated and sporadic instances are insufficient.  *Faragher*, 118 S. Ct. at 2283 ("simple teasing . . . offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'").  S*ee generally National R.R. Passenger Corp. v. Morgan*, 122 S. Ct. 2061, 2073 (2002) (the mere utterance of a

racial epithet that offends an employee does not create a cause of action for race discrimination).

In determining whether the alleged conduct is objectively sufficiently severe or pervasive to alter an employee's terms or conditions of employment, a court should consider four factors:  "(1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance."  *Gupta,* 212 F.3d at 584 (quoting *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1246).

Plaintiff has failed to present evidence of conduct that, objectively, is severe or pervasive.  The evidence does not demonstrate a workplace environment that "is permeated with 'discriminatory intimidation, ridicule, and insult,' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment . . . .'" *Harris,* 510 U.S. at 21 (quoting *Meritor Savings Bank*, 477 U.S. at 65, 67). Rather, the evidence from trial, construed in the light most favorable to Plaintiff, shows only the following alleged racially hostile events that were known to Plaintiff during his employment with Bagby:[2]

_____

[2] Incidents that were not made known to Plaintiff until after his termination **or** for which "there [is] insufficient information as to when the statements were made, how

(1)     Curley Thomas reported to Plaintiff that he overheard Ron Farley say "If I give a nigger some ice cream, will he eat it?";

(2)     Plaintiff once overheard co-worker David Walker say that he didn't like black folks;

(3)     Plaintiff heard co-worker David Walker call Tony Jemison a "monkey" several times; and,

(4)     On one occasion, Plaintiff overheard Ron Farley's telephone conversation with a man named Howard during which Farley said, "Those niggers are crazy.  They're the stupidest niggers I've ever seen."[3]

The record shows that these alleged events took place between September of 2000 – when Curley Thomas told Plaintiff that he overheard Ron Farley say, "If I give a nigger some ice cream, will he eat it ?" – and Plaintiff's termination on June 7, 2002.  There is no evidence that the comments were accompanied by physically threatening or humiliating conduct or that the comments unreasonably interfered with Plaintiff's job performance.  Also, the evidence shows that the alleged comments were not frequent or severe in nature.  More importantly, Plaintiff and Curley Thomas testified that Ron Farley did not know that anyone except the white employee to whom he was speaking was in a position to overhear the comment.

Plaintiff alleges that he knows of two other supposedly racial comments, to wit:

knowledge of them was acquired, and when [plaintiff] was informed of them (if [he] was)" cannot support a hostile environment claim.  Edwards v. Wallace Community College, 49 F.3d 1517, 1522 (11th Cir. 1995) (parentheses in original).
[3] Plaintiff testified Ron Farley was in his office, which is made of concrete block with the door closed, when Plaintiff overheard these comments.

(A)    that David Walker told Plaintiff that he would make Plaintiff's son an orphan if  Plaintiff did not stop laughing at him, and

(B)    that Plaintiff overheard David Walker say that he and Ron wanted to "fuck a black woman" before they die.[4]

These two alleged statements cannot be considered as evidence of a racially hostile work environment.  To be considered, the comments must be race-based and hostile toward blacks.  Item A is not race-based – there is no reference to the race of Plaintiff or his son, nor did Plaintiff provide any race-based conversation or argument that preceded the statement so as to infuse it with racial animus.  *See Gupta*, 212 F.3d at 583 (quoting *Faragher*, 524 U.S. at 788) ("[T]he statements and conduct must be of a sexual or gender-related nature before they are considered in determining whether the severe or pervasive requirement is met.  Innocuous statements or conduct, or boorish ones that do not relate to the sex of the actor or of the offended party (the plaintiff), are not counted.  Title VII, as it has been aptly observed, is not a 'general civility code.'") (parenthesis in original); *Mendoza*, 195 F.3d at 1248 n. 5 (11th Cir. 1999) (citing *Henson v. City of Dundee*, 682 F.2d 897, 904 (11th Cir. 1982)) (to establish that the alleged harassment is based upon race, a plaintiff must show that, but for his race, he would not have been the object of the harassment).  And, because Item B

---

[4] Even if this comment is considered part of the hostile environment claim, the statement was not directed to Plaintiff to single him out, or humiliate him because of his race.

does not indicate any hostility toward black people, it is not evidence of a hostile working environment.  *Harris,* 510 U.S. at 21 (quoting *Meritor Savings Bank*, 477 U.S. at 65, 67). Plaintiff testified a co-worker made this statement "out of the blue," apparently "*apropros* of nothing," and, as such there was no context for hostility beyond the fact stated.

In the case of *Lawrence v. Wal-Mart Stores, Inc.,* it was held that the following events did not create a racially hostile work environment:

> Co-manager Ron Dixon directly supervised Plaintiff, and Robert Mulack was the store manager. During Plaintiff's eight-month employment at the Port Orange store, Dixon allegedly made several race-related comments to Plaintiff, including: 1) on Plaintiff's first day of work, Dixon said in front of another co-manager, Gary Graves, that Plaintiff should be careful in Port Orange because the police frequently pulled over and harassed a former African-American employee; 2) Dixon said, during lunch with Plaintiff some time during the summer of 1999, that he had slept with a black woman and that she was too aggressive for him, "you know how you all can be"; 3) while patting Plaintiff on the back, Dixon said to Plaintiff in September or October of 1999, ". . . I have that gun [like the one that was missing from the store] at home along with several more at home just like it to shoot blacks"; 4) in a discussion held prior to November 9, 1999 between Plaintiff, Mulack, and Dixon, about Mulack's daughter being interested in dating an African-American man, Dixon said "I guess your daughter has 'Jungle Fever.'"; 5) during a November 9, 1999, manager's meeting, Dixon said, in response to positive feedback from upper management about Plaintiff's work-related photos, "I've got two words for you Wayne, low key, low profile.  We don't like superstars around here and we don't like heroes . . . . remember how we did blacks back in the thirties when they got out of hand . . . we would take them out back and lynch them"; 6) on December 9, 1999, Dixon said that his friend called

> Plaintiff a "Jesse Jackson type black guy" if he continued to complain to Dixon's superiors; 7) Dixon referred to Plaintiff twice as "homeboy," once or twice as "boy," and daily as "brother."

236 F. Supp. 2d 1314, 1318-19 (M.D. Fla. 2002) (footnotes and record citations omitted). *See also Gullatte v. Westpoint Stevens, Inc.,* 100 F. Supp. 2d 1315, 1321-23 (M.D. Ala. 2000) (racially hostile work environment not established even where plaintiff's supervisor called him "nigger" on several occasions, once while threatening termination).  The evidence presented in the case at bar does not approach the severity of the conduct at issue in *Lawrence* or *Gullatte*, or even *Mendoza* for that matter.  It is imperative to stress that in these cases, where the alleged conduct was more severe than in this case, the courts rejected the claimants' hostile environment claims as not objectively sufficient as a matter of law.

In addition to showing that the work environment was permeated with racial hostility that was severe and pervasive, these cases provide that Plaintiff must also show that it was so severe as to change the terms and conditions of his employment, or that he was harmed in some way. Plaintiff denies that anything about his job changed as a result of the alleged hostile environment such that he suffered legally cognizable damage.  For these reasons, Plaintiff's hostile environment claim should

have been dismissed on Bagby's Motion for Summary Judgment, and, in any event, should not have been allowed to go to the jury.

      B.    <u>Plaintiff's Race-Based Wrongful Termination Claim</u>

The wrongful discharge claim fails for insufficient evidence, as a matter of law, because Plaintiff did not present evidence that race was a factor in Bagby's handling of his decision not to sign the dispute resolution agreement.  Plaintiff has no direct evidence.  The record is also devoid of any circumstantial evidence, *i.e.*, evidence that a white employee refused to sign Bagby's dispute resolution agreement but was not deemed to have resigned from employment.

The wrongful discharge claim fails as a matter of law because the undisputed evidence shows that Bagby accepted Plaintiff's resignation from employment for a legitimate reason – his failure to execute the company's dispute resolution agreement.  Plaintiff has not presented sufficient evidence that this proffered reason is a pretext.  "[A] reason cannot be proved to be 'a pretext for discrimination' unless it is shown both that the reason was false, and [ultimately, at trial] that discrimination was the real reason." *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 515 (1993); *see also Mitchell v. USBI Co.*, 186 F.3d 1352, 1355 (11th Cir. 1999).  Plaintiff not only failed to show that the reason was false, but plainly admitted the

reason was true in saying that if he had signed the agreement he would still be working at Bagby.

In *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 148-49 (2000), the Supreme Court set out a framework for assessing motions for judgment as a matter of law in the context of situations where a legitimate non-discriminatory reason is alleged to be pretextual:

> [A] plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated.
>
> This is not to say that such a showing by the plaintiff will always be adequate to sustain a jury's finding of liability. Certainly there will be instances where, although the plaintiff has established a prima facie case and set forth-sufficient evidence to reject the defendant's explanation, no rational factfinder could conclude that the action was discriminatory. For instance, an employer would be entitled to judgment as a matter of law if the record conclusively revealed some other, nondiscriminatory reason for the employer's decision, or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred.  To hold otherwise would be effectively to insulate an entire category of employment discrimination cases from review under Rule 50, and we have reiterated that trial courts should not "'treat discrimination differently from other ultimate questions of fact.'"
>
> Whether judgment as a matter of law is appropriate in any particular case will depend on a number of factors.  Those include the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case

and that properly may be considered on a motion for judgment as a matter of law.

*Id.* (some citations omitted).  Plaintiff's evidence does not amount to sufficient evidence to support the jury verdict.  Without any legally admissible evidence of race discrimination, Plaintiff was simply allowed to inflame the jury with irrelevant and illegal questioning and testimony.

C.    Plaintiff's Retaliation Claim

The retaliatory discharge claim fails as a matter of law because Plaintiff cannot establish an essential element of his claim.  To establish a *prima facie* case, Plaintiff must prove (1) engagement in statutorily protected expression, (2) an adverse employment action and (3) a causal relation between the two events.  *Pennington v. City of Huntsville*, 261 F.3d 1262, 1265-66 (11th Cir. 2001).  The only protected expression to which Plaintiff can point is the act of filing a Charge of Discrimination with the EEOC on October 5, 2001.[5]  But, the record does not contain evidence that Plaintiff suffered an adverse employment action after filing the charge.  Instead, the uncontroverted evidence shows that Plaintiff voluntarily

---

[5] Refusing to sign Bagby's dispute resolution agreement is not a statutorily protected expression.  *Weeks v. Harden Manufacturing Corp.,* 291 F. 3d 1307, 1315-17 (11th Cir. 2002).  The other alleged act of retaliation – that Plaintiff experienced retaliation when he was reprimanded for using the vacation calendar – was held not to be an adverse employment action.  The record shows that Plaintiff did not suffer any wage loss, a suspension, different work conditions, different hours or anything adverse as a result of the calendar incident.

resigned 8 months later by choosing not to sign Bagby's dispute resolution agreement.

Plaintiff (and his counsel, whom he involved in his decision not to sign the agreement) had ample notice that compulsory arbitrary agreements for employment claims are lawful. *See Weeks,* 291 F.3d 315. This case was handed down May 22, 2002 and the Bagby dispute resolution agreement was presented to its non-union employees on June 6, 2002. Plaintiff's act of filing an EEOC charge 8 months before had no connection with the initiation of the dispute resolution agreement at Bagby. Plaintiff has not presented any evidence to the contrary.

The retaliatory discharge claim fails as a matter of law because Plaintiff cannot establish another essential element of his claim. There is simply no evidence of a causal connection between the charge filed on October 5, 2001, and the cessation of employment on June 7, 2002. Absent a communication, or some other evidence connecting the two, which he denies, Plaintiff's only chance of establishing a causal connection would be temporal proximity between the two events. An eight-month time gap between the two events does not suffice to create an inference of retaliatory intent. *Clark County School District v. Breeden*, 532 U.S. 268, 273 (2001); *see Hammons v. George C. Wallace State Community College,* 2006 WL

655061 (11th Cir.)(time gap of 5 months between protected expression and adverse employment action did not constitute causal connection); *Embry v. Callahan Eye Fd. Hosp.,* 2005 WL 2009046 (11th Cir.)(time gap of 9 months did not constitute causal connection); *Clark County School District v. Breeden*, 532 U.S. 268, 273 (2001); *Richmond v. Oneok, Inc.*, 120 F.3d 205, 209 (10th Cir. 1997) (held that a 3-month period of time between the protected activity and the adverse employment action is insufficient to satisfy the causal connection requirement); *Hughes v. Derinski*, 967 F.2d 1168, 1174-1175 (7th Cir. 1992) (same holding as to a 4-month period of time); *Valdez v. Mercy Hospital*, 961 F.2d 1401, 1403 (8th Cir. 1992) (no retaliation found where six months passed between protected  activity and termination) (superseded by statute on other grounds); *Balletti v. Sun-Sentinel Co.,* 909 F. Supp. 1539, 1549 (S.D. Fla. 1995) (elapse of six months between grievance and discharge did not permit inference of causal connection); *Juarez v. Ameritech Mobile Communications, Inc.*, 746 F. Supp. 798, 804 (N.D. Ill. 1990) (six months between complaint and termination too remote), *aff'd* 957 F.2d 317 (7th Cir. 1992); *Maldonado v. Metra*, 743 F. Supp 563, 568  (N.D. Ill. 1990) (five month lapse between protected expression and termination too remote to establish retaliatory discharge); *Reeves v. Digital Equipment Corp.*, 710 F. Supp. 675, 677 (N.D.

Ohio 1989) (no retaliation where three months passed between protected expression and adverse employment action); *Brown v. A.S.D. Computing Center*, 519 F. Supp. 1096, 1116-17 (S.D. Ohio 1981) (discharge four months after protected activity too remote).  There is no fact whatsoever Plaintiff can show to obviate the significance of the 8 month gap to the issue of causal connection.

The retaliatory discharge claim fails as a matter of law because Plaintiff's employment ended for a legitimate, non-retaliatory reason: Plaintiff's decision not to sign the dispute resolution agreement that Bagby presented to all of its non-union employees.  Plaintiff admitted this. Interestingly, after a visit to his attorney, Plaintiff tried to negotiate the terms of the agreement and presented an altered agreement, excepting past and present claims from the purview of the agreement, but that too was not signed.

The retaliatory discharge claim fails as a mater of law because it is barred by the same decision defense.  *Steger, supra*, 318 F.3d at 1075 (11th Cir. 2003) (*citing Price Waterhouse v. Hopkins*, 490 U.S. 228, 252-53 (1989)).  Even if Bagby made a unilateral decision to terminate Plaintiff's employment, the uncontroverted evidence shows that Bagby would have

done so because of his refusal to sign the dispute resolution agreement, regardless of whether any unlawful factor played a role in the decision.

      D.    <u>Plaintiff's Punitive Damage Claim</u>

          a.    Lack of malice or reckless indifference.

Bagby is entitled to judgment as a matter of law on Plaintiff's claim for punitive damages because Plaintiff failed to present evidence that Bagby engaged in a discriminatory practice against Plaintiff with malice or with reckless indifference to Plaintiff's federally protected rights.  *See*, *e.g.*, *Kolstad v. American Dental Association*, 527 U.S. 526 (1999); *Ferrill v. Parker Group, Inc.*, 168 F.3d 468, 476-77 (11th Cir. 1999); *Dudley v. Wal-Mart Stores, Inc.*, 166 F. 3d 1317, 1322-23 (11th Cir. 1999); 42 U.S.C. § 1981a(b).

          b.    Bagby has established the elements in *Kolstad*.

Plaintiff may not recover punitive damages because the evidence shows that Bagby acted in good faith to comply with the laws made the basis of this suit.  *See, e.g., Kolstad v. American Dental Association*, 527 U.S. 526 (1999); *Dudley v. Wal-Mart Stores, Inc.*, 166 F. 3d 1317, 1322-23 (11th Cir. 1999); 42 U.S.C. § 1981a(b).

Plaintiff failed to establish that Arthur Steber, in firing Plaintiff, did so when he believed Bagby would be violating Plaintiff's federally protected

rights.  This state of mind is a crucial element predicate to an award of

punitive damages in this case, as set forth by the *Kolstad* court:

> Moreover, § 1981a's focus on the employer's state of mind gives some
> effect to Congress' apparent intent to narrow the class of cases for
> which punitive awards are available to a subset of those involving
> intentional discrimination. The employer must act with "malice or
> with reckless indifference *to the [plaintiff's] federally protected
> rights.*" § 1981b(1) (emphasis added). The terms "malice" or "reckless
> indifference" pertain to the employer's knowledge that it may be
> acting in violation of federal law, not its awareness that it is engaging
> in discrimination.

*Kolstad, supra* at 527 U.S. at 533.

There is no testimony at all about the state of mind of Arthur Steber,

who dismissed Plaintiff, to the effect that he believed he was violating any

federal rights of Plaintiff.  On the contrary, the Court can certainly take

notice that the decision of the Eleventh Circuit Court of Appeals in *Weeks*

had been handed down May 22, 2002, within a month of Bagby initiating

its dispute resolution agreement program.  Mr. Steber had every right to

expect that his dismissal of Plaintiff was consistent with federal law.

No reasonable juror could reasonably infer any malice or recklessness

in Plaintiff's discharge. Bagby submits the jury only assessed punitive

damages after illegal, inflammatory and irrelevant testimony regarding

Arthur Bagby, as well as other employees who had been terminated, was

introduced, even though it had no bearing upon Plaintiff's claims.

34

c.     Plaintiff's failure to argue punitive damages in his closing in chief.

A JML should be granted on the punitive damages awarded on the wrongful discharge and retaliation claims because Bagby was irreparably harmed and suffered irremediable prejudice, when the Plaintiff failed to argue, or even mention punitive damages in Closing, but did so and asked for more than "six figures" in Rebuttal Argument.  Bagby responded to Plaintiff's Closing and did not mention punitive damages and was prevented from responding with argument on the merits of punitive damages following Plaintiff's Rebuttal. Bagby objected to the argument for punitive damages in the Rebuttal Argument, and the Court should have struck the claim and abused its discretion in overruling the objection.  The net effect is that because appropriate notice of Plaintiff's claim for punitive damages was not argued in Closing, Bagby was deprived of the right to argue that claim at all so the punitive damages award is due to be reversed and rendered.

### III.  MOTION FOR NEW TRIAL

A.     EEOC Determinations

Defendant filed a Motion in Limine to prohibit the introduction of EEOC cause determinations issued with respect to Plaintiff, as well as reference to those in previous litigation between Bagby and former

employees, LaTrinda Peoples ("Peoples") and Anthony Jemison ("Jemison").  There were two cause determinations for Jemison because he filed related charges under two charge numbers.  However, pursuant to Fed. R. Evid. 402, 403 and 803(8)(c), the introduction of this evidence is improper and highly prejudicial.  Only Plaintiff's Determination was admitted into evidence, but Plaintiff's attorneys were allowed to ask about the existence of the other three.  Bagby objected to the Plaintiff's EEOC Determination being introduced into evidence because it was irrelevant and any probative value it had was far outweighed by the substantial prejudice that would inure to Bagby.

Fed. R. Evid. 403 provides in relevant part that: "Although relevant, evidence may be excluded if the probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." The danger of unfair prejudice is illustrated by the mere presence of the United States Government letterhead displayed on the face of the cause determination, so great care must be used in ever admitting one.  That care was not exercised here.  Moreover, the cause determinations likely confused and misled the jury, especially with regard to the misperceived weight of this evidence.

The EEOC cause Determination lacked "trustworthiness" as contemplated by Fed. R. Evid. 803(8)(C).  The EEOC Determination issued to the Plaintiff did not set out any factual fruits of its investigation, but merely announced in a conclusive fashion that Bagby was guilty on each allegation of Plaintiff.  This document did not provide any proof with which Plaintiff was burdened, but simply appeared to provide legal conclusions arrived at from a fair investigation.  That was not the case.

The evidence showed the EEOC obtained a sworn statement from Larry Gardner, the Union Business Agent who, undisputedly, held a grudge against Bagby.  The EEOC also had an affidavit from Larry Gardner that was drafted and notarized by Plaintiff's counsel and which was substantially recanted by Mr. Gardner after the EEOC Determination was issued.  Mr. Gardner admitted this fact at deposition and trial.  Defendant showed evidence the EEOC relied upon in reaching its Determination was incorrect and yet, the Court allowed the cause Determination to be admitted.  This admission provided an unfair advantage to Plaintiff because the jury could, and presumably did assume with respect to discharge and retaliation, that Plaintiff had already proven his case to a government agency.

The admission of the Plaintiff's Determination was tantamount to admitting the written opinion of a purported expert witness as to what conclusions the jury should draw.  Ultimately, these admissions invaded the province of the jury as to the ultimate issue of liability in Goldsmith's lawsuit by suggesting a government agency had already made a legitimate finding as to Bagby's liability.  The Court abused its discretion under Rule 803(8)(C) in allowing the introduction of Plaintiff's EEOC Determination. *See Barfield v. Orange County*, 911 F.2d 644 (11th Cir. 1990). *See, e.g.*, *Walker v. Nationsbank of Florida, N.A.*, 53 F.3d 1548, 1554-55 (11th Cir. 1995) (district court's decision that danger of submitting confusing issues to jury by admitting EEOC determination letter substantially outweighed admittedly probative effect held not abuse of discretion); *Lee v. Executive Airlines, Inc.*, 31 F. Supp. 2d 1355, 1356-57 (S.D. Fla. 1998) (decision to exclude EEOC determination is within the discretion of the trial judge; probative value of EEOC determination letter containing conclusory statements and reasonable cause to believe that black employees were given disparate treatment was substantially outweighed by danger of unfair prejudice); *Harris v. Birmingham Bd. of Educ.*, 537 F. Supp. 716, 721-22 (N.D. Ala. 1982) ("The trustworthiness of the [EEOC] determination is eroded by the obvious disregard of the affidavits submitted ... the court is

appalled by the numerous slanted statements contained in the determination . . .").

On the same grounds, the Court abused its discretion in allowing Plaintiff's attorneys to solicit questions about the existence of cause Determinations issued to LaTrinda Peoples and Anthony Jemison.  This essentially "me too" evidence was not germane to Plaintiff's case, but had the effect of appearing to provide, what Plaintiff contended, was evidence of similar acts of discrimination and amounted to a discriminatory pattern of treatment toward African-American employees.  Due to their summary and factually unsupported hearsay nature, Bagby was unable to cross-examine these Determinations, which presumptively swayed the jury in spite of the absence of due process in their creation.  The jury instruction about the nature of the Determinations was not curative or effective because the jury cannot know what facts are behind the legal conclusions offered therein, but would be inclined to believe that if a federal agency had found liability, then they should too.  A new trial should be granted because of the introduction of the EEOC Determinations into the case.

B.    Employment and Termination of Others

Plaintiff's pattern and practice claim is barred as a matter of law because an individual plaintiff cannot bring such a claim.  Pattern and

practice claims may be brought either by the EEOC upon reasonable cause to believe that the respondent has engaged in a pattern or practice of discrimination, or by a class of private plaintiffs. *EEOC v. Joe's Stone Crab, Inc.*, 220 F. 3d 1263, 1286 (11th Cir. 2000), *cert. denied*, 539 U.S. 941 (2003). *See also Bacon v. Honda of America Mfg., Inc.*, 370 F.3d 565, 575 (6th Cir. 2004) ("We therefore hold that the pattern-or-practice method of proving discrimination is not available to individual plaintiffs. We subscribe to the rationale that a pattern-or-practice claim is focused on establishing a policy of discrimination; because it does not address individual hiring decisions, it is inappropriate as a vehicle for proving discrimination in an individual case."); *Lowery v. Circuit City Stores*, 158 F.3d 742, 760 (4th Cir. 1998) (same), *vacated on other grounds*, 527 U.S. 1031 (1999), *cert. denied*, 531 U.S. 822 (2000); *Gilty v. Village of Oak Park*, 919 F.2d 1247, 1252 (7th Cir. 1990) (same); *Scarlett v. Seaboard Coast Line R. Co.*, 676 F.2d 1043, 1053 (5th Cir. 1982); *Babrocky v. Jewel Food Co.*, 773 F.2d 857, 866-67 n. 6 (7th Cir. 1985). As the Supreme Court has held:

> The crucial difference between an individual's claim of discrimination and a class action alleging a general pattern or practice of discrimination is manifest. The inquiry regarding an individual's claim is the reason for a particular employment decision, while at the liability stage of a pattern-or-practice trial the focus often will not be on individual hiring decisions, but on a pattern of discriminatory decision making.

*Cooper v. Fed. Reserve Bank of Richmond*, 467 U.S. 867, 875-76 (1984) (internal quotations omitted).

Evidence of alleged discrimination and retaliation against LaTrinda Peoples and Anthony Jemison was irrelevant, highly prejudicial, not probative of Plaintiff's claims and, ultimately, confused and misled the jury. The Court allowed over objections, the testimony of Curley Thomas who complained about hearing the "N word" and allegedly found another job because of the work "atmosphere" but was let go after giving notice. He never filed an EEOC Charge. This testimony too was introduced and allowed under the claim of a pattern and practice. Moreover, the Court further abused its discretion, resulting in manifest injustice, to allow Curley Thomas to testify to a racial comment Ron Farley had made, not in the presence of Plaintiff, nor told to Plaintiff during his employment.

The Court allowed over objection, testimony of LaTrinda Peoples, a former office worker at Bagby, regarding her charge of discrimination, subsequent finding and charge of retaliation under the claims of a pattern and practice. Moreover, Plaintiff's counsel was allowed, over objection, to solicit the fact that the EEOC had issued a cause Determinations on, not only Ms. Peoples' charges, but on another co-worker's, Anthony Jemison, as well.

Plaintiff's counsel was allowed to solicit information about Mr. Jemison's charges, over objection, from Bagby's General Counsel  under the guise of proving a pattern or practice allegation that had been allowed the day before trial, but never filed.

After the close of the evidence, Defendant moved to dismiss the pattern or practice claim and the Court granted the Motion and did not include a jury charge on the claim.  When the Defendant asked for a charge instructing the jury not to consider any evidence whatever about other employees or their charges, the Court refused by ruling, over objection, that the evidence was admissible under Fed. R. Evid., Rule 406.  Bagby was never given an opportunity during trial to respond to the admission of this evidence under Fed. R. Evid., Rule 406. Plaintiff did not introduce the evidence as consistent with habit and custom under Rule 406.[6]

The nature of "habit" for purposes of this Rule of evidence amounts to a description of "one's regular response to a repeated specific situation." *McCormick on Evidence* § 195 (2d ed. 1972) cited by *Priest v. Rotary*, 98 F.R.D. 755, 73 A.L.R. Fed. 736 (N.D. Cal. 1983). Evidence of character and attempts to show that a party acted in conformity with a certain trait are

---

[6] Fed. R. Evid., Rule 406 provides: "Evidence of the habit of a person or the routine practice of an organization, whether corroborated or not and regardless of the presence of eyewitnesses, is relevant to prove that the conduct of the person or organization on a particular occasion was in conformity with the habit or routine practice."

prohibited by Fed. R. Evid., Rule 404.  Habit is distinguished from character for the purpose of considering the admissibility of evidence by the test enunciated by Dean Wigmore which allows evidence of habit that shows an " 'invariable regularity of action,' or at least 'sufficient regularity to make it probable that [an action] would be carried out in every instance or in most instances.'" *Priest,* 98 F.R.D. at 759 citing 1 Wigmore, *Evidence* § 92, p.520 (3d ed. 1940), *accord U.S. v. Newman,* 982 F.2d 665, 668 (1st Cir. 1992)("behavior at issue occurred with sufficient regularity making it more probable than not that it would be carried out in every instance or in most instances.").

The lack of 'thoughtful intention of acts taken' is another phrase suggesting habit which has endured for decades.  The court in *Levin v. United States,* 338 F.2d 265 (D.C. Cir. 1964), *cert. denied,* 379 U.S. 999, 85 S. Ct. 719, 13 L. Ed. 2d 701, n. 5 (1965), quoting Chamberlayne, Modern Law of Evidence § 3204, p. 4433, said:

> The probative force of habit, whether the question arises in a civil or criminal case, is based principally upon the fact that habitual conduct is largely free from the complicating and confusing element of volition which makes the relevancy of moral conduct merely deliberative, but, on the contrary, brings such conduct in line with the activities of the body which are under the control of the subliminal mind, i.e., are of the automatic nature, practically under the uniformity of natural law. In fact, the probative strength of habit is in proportion to the extent to which it assumes this automatic character.

Plaintiff failed to allege, and the testimony of the other African-American employees who had worked for Bagby and were allowed to testify, did not bear out the unvaried regularity of numerous instances necessary to show a routine of an organization under Rule 406. *See Bowman v. Corrections Corp. of America,* 350 F.3d 537, 549 (6th Cir.2003) citing *Simplex, Inc. v. Diversified Energy Systems, Inc.,* 847 F.2d 1290, 1294 (7th Cir. 1988) ("'Before a court may admit evidence of habit, the offering party must establish the degree of specificity and frequency of uniform response that ensures more than a mere 'tendency' to act in a given manner, but rather, conduct that is semi-automatic in nature.'").

Even if testimony concerning Bagby's alleged discrimination and retaliation against former employees Latrinda Peoples, Anthony Jemison and Curley Thomas were somehow relevant, or passed Rule 406 muster – which it was not and did not – it should have nevertheless been excluded under Fed. R. Evid., 403 because "its probative value was substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." The power to exclude relevant evidence under Rule 403 is within the absolute discretion of the

trial court.  *See Green v. Bock Laundry Mach. Co.*, 490 U.S. 504 (1989). In the present case, the Court utterly abused its discretion.

Here, evidence of Bagby's alleged treatment of others was fraught with exactly the kind of peril that Rule 403 was designed to avoid.  The allegations against Bagby claimed by Peoples, Jemison and Thomas were not shown to be substantially similar to Goldsmith's claims, nor were there common decision-makers.  Moreover, Peoples, Goldsmith and Jemison were fired for different reasons and at different times.  Plaintiff introduced the evidence only because all three employees happened to be fired after they filed EEOC charges and Thomas was let go before he could work out his notice.  Bagby was not prepared to mount the complete defenses to these claims and could only present evidence of the real reasons for their respective terminations.

Permitting the testimony regarding Bagby's alleged treatment of others resulted in grievous and irremediable prejudice by requiring Bagby to defend against those allegations of discrimination and/or retaliation in Mr. Goldsmith's trial.  These actions of the Court, singly and cumulatively, amounted to abuse of discretion.  There is no doubt this improper testimony was designed to and did unfairly prejudice Defendant and inflame the jury up to the $500,000 punitive damage award.  *See, e.g.*,

*McWhorter v. City of Birmingham*, 906 F.2d 674, 679 (11th Cir. 1990) *cert. denied* 498 U.S. 897 (1990) (excluding evidence of harassment of other police officers in retaliation case, since such evidence would result in a series of mini-trials); *Kelly v. Boeing Petroleum Services, Inc.,* 61 F.3d 350 (5th Cir. 1995) (affirming district court's exclusion of alleged harasser's discriminating act because "the probative value of the offered evidence was greatly outweighed by the danger of unfair prejudice, confusion of the issues, and the veritable certainty that the presentation of such evidence would mislead and inflame the jury."); *Williams v. Nashville Network*, 132 F.3d 1123, 1130 (6th Cir. 1997) (excluding evidence that black applicant other than plaintiff was not hired by defendant since such testimony, which was unrelated to the failure to hire the plaintiff, would have led to confusion of the issues and would have required the defendant to present testimony to explain why the other applicant was not hired); *Sims v. Mulcahy*, 902 F.2d 524, 531 (7th Cir. 1990) (excluding evidence of the discharge of other black employees in race discrimination case pursuant to Fed. R. Evid. 403 since the admission of such evidence would have resulted in a "trial within a trial" on the question of the other employees' terminations) *cert. denied* 498 U.S. 897 (1990); *Endy v. BWD Automotive*

*Corp.*, 1989 WL 165567 * 3 (N.D. Ga. 1989) (evidence of alleged inappropriate conduct against other employees properly excluded).

For the foregoing reasons, Bagby asserts that the Court erred to reversal in allowing testimony and entering documents relating to and concerning the unrelated experiences, charges and terminations of other employees in Plaintiff's trial.

C.    Inflammatory Questioning

A new trial should be granted on the wrongful discharge and retaliation claims because Bagby was irreparably harmed and suffered irremediable prejudice, and the jury was unlawfully influenced as a result of the Court allowing Plaintiff, over objection, to articulate to a witness called by Plaintiff, leading questions accusing officers of Bagby of using the word "nigger," neither of whom made any employment decisions regarding Plaintiff, or others mentioned in the lawsuit. The Court in *Steger, supra,* held that: "[A]lthough a decision maker's statement regarding an employee's 'family man'[7] status can serve as evidence of discrimination,  *see Taylor v. Runyon,* 175 F.3d 861,869 (11th Cir.1999), 'statements by nondecisonmakers, or statements by decisonmakers unrelated to the decisional process' at issue will not satisfy the employee's burden.  *Price*

---

[7] *Steger* involved a gender claim where a "non-decisionmaker" allegedly said that the plaintiff had a husband to take care of her.

*Waterhouse, supra* at 490 U.S. at 277, 109 S. Ct. at 1805 (O'Connor, J., concurring)." *Steger,* 318 F.3d at 1079.

The *Steger* court referred to the basic relevancy of Rules 401 and 402, Fed. R. Evid., in saying, "[E]vidence is relevant and, therefore, admissible, if [it] tends 'to make the existence of any fact that is of consequence to the determination of the action more probable or less probable that (sic) it would be without the evidence." *Id.*

The question initially was whether the witness had heard Arthur and Hunter Bagby at the Birmingham Country Club refer to the Plaintiff as a "nigger." When the answer to the question was "no," the Court allowed Plaintiff's attorney to continue with the same line of questions, basically allowing Plaintiff's counsel to testify and suggest that the witness told her such things in a phone call, even though Plaintiff had already testified he had never heard, either Arthur of Hunter Bagby, say the word "nigger." The result was that the jury was encouraged to believe the Bagby men were associated with the use of this heinous word. The jury was inflamed to grave prejudice by these questions that had no probative value to Plaintiff's claims. Despite the denials, with no evidence to support the arguments and over objection, Plaintiff's attorneys were allowed in Closing and Rebuttal to point at and accuse these men of being racists and saying the "N" word,

with the implication that such claims were true and took place in the workplace.  This was reversable error resulting in manifest injustice for which a new trial is mandated.

Bagby contends this highly inflammable cross-examination, including asking Arthur Bagby if he was a member of the Ku Klux Klan, substantially swayed the jury in the judgment rendered, especially the punitive damage award.  The Court should rectify this abuse of discretion by declaring a new trial as to the claims upon which Plaintiff prevailed.  *See Ad-Vantage Telephone Directory Consultants, Inc. v. GTE Directories Corp.,* 37 F.3d 1460, 1465 (11th Cir. 1994).

D.    Testimony of Courtroom Deputy

The Court's Courtroom Deputy told the Judge of a comment she had heard by Arthur Bagby and directed to the witness she had entered the witness room to call to testify.  This comment was not said in front of the jury, or any participant in the trial and was only raised by the Court after the witness had testified and left the courthouse.  Regardless of its content, the comment could not have unfairly influenced the decisions taking place in the courtroom, until the Court announced the comment to the lawyers and parties, and allowed Plaintiff's attorneys to recall the witness as to the alleged remark and thereafter to call the courtroom Deputy to the stand.

49

The comment facially and in all actuality was innocuous, until it was given undefined import by the allowance of this irrelevant testimony. The witness had just left the courthouse and was called to return, requiring a halt in proceedings for approximately 15 minutes. When he returned and took the stand in front of the jury, the witness could not remember anything that Arthur Bagby had said to him upon his leaving the witness room. That should have been the end of the inquiry. But the Plaintiff called and the Court allowed, over objection, the Courtroom Deputy to testify, in front of the jury that when she called for the witness who was an employee for Bagby, that Arthur Bagby said, "Go get'm, champ."

Naturally, the jury would have to think there was some sinister meaning behind this encouraging phrase, especially when the Plaintiff's attorney used it repeatedly in Closing argument with a sarcastic and sneering tone in connection with the use of the "N word." The fact the Deputy was called by Plaintiff and testified about something Arthur Bagby said, lent the Court's presumed impartiality to the cause of the Plaintiff. No instruction could cure this shift in apparent impartiality that resulted in manifest injustice, so a new trial is mandated. *See generally Parker v. Gladden*, 385 U.S. 363 (1966).

E.     Testimony as to Double Arthur L.L.C.

Plaintiff called Arthur Steber to the stand and asked him about Double Arthur, L.L.C. which is a real estate holding company owned equally by Arthur Bagby and Arthur Steber. The L.L.C. owns the real estate upon which the Birmingham and Mobile offices sit.  There is no theory upon which this information was elicited except one designed to suggest something sinister had been done by Bagby, or to insinuate Arthur Bagby's alleged wealth into the trial. The Court abused its discretion in allowing this testimony which was irrelevant, immaterial and having no probative value to Plaintiff's claims, yet highly prejudicial without cure to Bagby.

F.     Admission of damages calculation

The day before trial, Plaintiff's counsel provided their calculation of damages pursuant to the Pretrial Order and Rule 26. Bagby did not have any notice this calculation would be offered into evidence by Plaintiff.  The document was not on Plaintiff's Exhibit List and the Court, over objection, allowed Plaintiff to testify from the document with leading questions from his attorney.  The calculation was itself a summary of calculations arriving at totals that Plaintiff could not explain.  Ultimately, the calculation combined the purported lost wages for the promotion claim and the discharge claim and added them together.  Plaintiff could not explain this but referred the opposing counsel and the jury to his attorney.  The form

also listed "mental anguish to be determined by a jury " and "punitive damages to be determined by a jury."  This allowed the jury to suggest they were required to award mental anguish and punitive damages if they awarded any lost wages, and the court's instruction did not, and could not, overcome this suggestion from the first witness in the case.

Bagby contends the admission of this document was an abuse of discretion requiring a new trial.

G.    Sustaining of Objection to argument of Bagby's Counsel at closing

After Plaintiff complained about what he heard Curley Thomas say he had overheard Ron Farley say that involved the "N" word, Bagby reprimanded Ron Farley.  The written reprimand was admitted into evidence.  Plaintiff testified he never knew Farley had been reprimanded until he filed the lawsuit.  Plaintiff himself acknowledged he had only complained once about Ron Farley to Arthur Steber who was the company President at the time.  It is undisputed Arthur Steber and Johnny Bowden who was Farley's supervisor, only received one complaint about Farley and reprimanded him one time and that was in September 2000.

Nevertheless, Plaintiff was allowed, over objection, to use the testimony of Hunter Bagby from the unemployment hearing of Anthony Jemison, to suggest otherwise.  Hunter Bagby testified at the Anthony

Jemison hearing that there were no prior reprimands on Anthony Jemison. Later, on appeal of the unemployment compensation determination, he found a previous reprimand he did not find in the beginning, but did not remember where he found it.  Plaintiff "impeached" Hunter Bagby on this collateral matter, or otherwise was allowed to delve into this matter, over objection, in order to suggest that Hunter Bagby had created the Jemison reprimand after the fact and with the same conniving nature, destroyed a "second reprimand" of Farley.  This was a clear suggestion of spoliation by Bagby, as well bad faith on the part of Hunter Bagby without any evidence whatsoever that a second reprimand of Ron Farley existed.  This matter was made more inflammatory since Plaintiff's attorneys asked each witness of Bagby who was a supervisor whether Ron Farley would have been fired if another reprimand about improper racial comments was issued to him. Each witness answered, "yes."

In Closing argument Plaintiff argued Bagby had destroyed the second reprimand and should have fired Farley, but did not.  The message was that Farley was not fired because he was white and racist.  Bagby's counsel argued that there was only one reprimand and Plaintiff's counsel objected, saying that was not what the evidence was.  The Court sustained this objection lending its credibility to the Plaintiff's alleged fact for the jury

which, if believed, surely laid the basis for the punitive damage award. Bagby was unable to argue the flimsy suggestion of Plaintiff that two reprimands existed because of the ruling and admonition of the Court.

This was patently unfair conduct of the trial and virtually unprecedented abuse of discretion of the Court.  The result was manifest injustice to Bagby warranting a new trial.  The power of the suspicion of spoliation is real and substantial.  Any reasonable jury that is led to believe that a party has spoliated evidence, is more likely than not going to find that party acted with a malicious state of mind in that and other circumstances.  Fully recognizing the Judge has full control over the conduct of the trial, with all due respect, this error was not curable.  Bagby requests a new trial.

### IV.  MOTION FOR REMITTITUR

In the alternative, and in the event that the Court denies Bagby's motion for judgment as a matter of law or for new trial, Bagby moves the Court for a remittitur of the judgment under Federal Rule of Civil Procedure 59(e) because there was insufficient evidence offered to support the jury's award of $27,260.59 for back pay on the Plaintiff's wrongful discharge and retaliation claims, $27,260.59 in compensatory damages for mental anguish, and $500,000 in punitive damages.

Because the Plaintiff did not prove a prima facie case of wrongful discharge or retaliation, he is not entitled to any award of damages; the jury's back pay and mental anguish awards as well as the punitive damages should be remitted to zero.  Plaintiff did not prove he was entitled to damages for these claims for two reasons:  (1) he admitted he would not have suffered damage if he had signed the dispute resolution agreement; and (2) the Court's submission into evidence of the Plaintiff attorneys' damage calculation through Plaintiff was an abuse of discretion warranting remittitur.

The allowance of the inflammatory questions and argument of Plaintiff's counsel, coupled with the entry of evidence concerning other employees, clearly so influenced the jury that the $500,000 award was made.  The punitive damage award of $500,000 is due to be remitted to zero because it would financially cripple Bagby.  The amount is fully 25% of the net worth testified to in trial and represents an amount that will financially cripple the company. That is not the aim of awarding punitive damages.  *Patterson v. Balsamico*, 440 F.3d 104, 122 (2nd Cir. 2006) (disproportionately large percentage of net worth of company awarded as punitive damages will not be affirmed because deterrence is related to what people can afford to pay).

A.     Punitive Damages Are Not Justified

The jury's finding of willful discrimination was unsupported by the evidence.  No evidence suggested that Bagby willfully violated any discrimination statute.  Plaintiff introduced the testimony of Arthur Steber who undisputedly made the decision to discharge Plaintiff when he refused to sign any dispute resolution agreement.  There was no evidence whatever that Arthur Steber knew that Plaintiff enjoyed any special protection from the consequences of refusing to sign the dispute resolution agreement, in the form it was presented, because a prior EEOC charge was pending.  Demonstrating this fact was essential to showing the requisite recklessness or "callousness to federally protected rights" of Plaintiff necessary to support an award of punitive damages.

B.     The Punitive Damages Award Is Excessive And Is Due To Be
        Reduced As Violative of Constitutional Due Process

Punitive damages are not a matter of right and the Plaintiff in this case is not entitled to them.  As the United States Supreme Court recently articulated, "[i]t should be presumed a plaintiff has been made whole for his injuries by compensatory damages, so punitive damages should only be awarded if the defendant's culpability, after having paid compensatory damages, is so reprehensible as to warrant the imposition of further sanctions to achieve punishment or deterrence."  *State Farm Mut. Auto*

*Ins. Co. v. Campbell*, 538 U.S. 408, 419 (2003)[8].  The jury in this case

provided the Plaintiff with compensatory damages sufficient to make him

whole without imposing punitive damages, and Bagby's conduct fell far

short of the level necessitating additional punishment or deterrence.

In *BMW of North America, Inc. v. Gore*, 517 U.S. 559 (1996), the

Supreme Court set forth three factors that a court should examine to

determine whether a jury's punitive damage award is excessive:

> (1)     the degree of reprehensibility of the defendant's conduct;
>
> (2)     the ratio of punitive damages to the actual harm inflicted; and
>
> (3)     comparable civil or criminal sanctions for the same conduct.

*Id*. at 574-75.  When all of these factors are considered in this case, it is

clear that the jury's punitive damages award of $500,000 is excessive.

> 1.     The Punitive Damages Award Is Far Greater Than The Degree Of Reprehensibility Of The Defendant's Conduct

The award of punitive damages in this case far outweighs the degree

of reprehensibility of Bagby's alleged conduct, which is "perhaps the most

important indicium of the reasonableness of a punitive damages award."

*See Gore*, 517 U.S. at 575.  The United States Supreme Court has articulated

---

[8] The Campbell Court addressed further concerns with punitive damages awards, noting the "imprecise manner in which punitive damages systems are administered" and that "'punitive damages pose an acute danger of arbitrary deprivation of property.  Jury instructions typically leave the jury with wide discretion in choosing amounts, and the presentation of evidence of a defendant's net worth creates the potential that juries will use their verdicts to express biases against big businesses.'"  538 U.S. at 417 (quoting *Honda Motor Corp. v. Oberg*, 512 U.S. 415, 432 (1994)) (emphasis added).

the following factors to consider in assessing reprehensibility:  (1) whether

the injury caused physical harm; (2) whether the tortious conduct

demonstrated an indifference to, or a reckless disregard of, the health or

safety of others; (3) whether the target was financially vulnerable; (4)

whether the conduct involved repeated actions; and (5) whether the harm

was the result of intentional malice, trickery, or deceit.  *See Campbell*, 538

U.S. at 419; *see also Kemp v. AT&T*, 393 F.3d 1354, 1363 (11th Cir. 2004).

For employment cases, the standard is whether the defendant

"engaged in a discriminatory practice . . . with malice or with reckless

indifference to the federally protected rights of an aggrieved individual." 42

U.S.C. § 1981a(b)(1). *See Kolstad, supra,* 527 U.S. at 536-37, where the

Court said: "There will be circumstances where intentional discrimination

does not give rise to punitive damages liability under this standard.  In

some instances, the employer may simply be unaware of the relevant

federal prohibition.  There will be cases, moreover, in which the employer

discriminates with the distinct belief that its discrimination is lawful.  The

underlying theory of discrimination may be novel or otherwise poorly

recognized, or an employer may reasonably believe that its discrimination

satisfies a bona fide occupational qualification defense or other statutory

exception to liability." (citations omitted).  Of course, that was the case here with the dispute resolution agreement.

Although the jury found that there was malice on the part of the defendant, such a finding could only have been premised on unlawful evidence.

In *Kolstad,* the United States Supreme Court held that an employee must demonstrate that her employer failed to make a good faith effort to comply with Title VII or to prevent or respond to discriminating conduct in order to recover punitive damages.  *Id.* at 545.  "Good faith effort" is determined by a number of factors.  In addition to maintaining a policy, an employer may exercise good faith by (1) providing employees with a way to make complaints; (2) assuring that employees are well-educated about the policy; and (3) assuring that management is aware of and follows the policy.  *See Miller v. Kenworth of Dothan, Inc.*, 82 F. Supp. 2d 1299, 1311 (M.D. Ala. 2000), *aff'd in part and rev'd in part on other grounds by* 277 F.3d 1269 (11th Cir. 2002).

Plaintiff admitted to knowing about the anti-harassment policies of Bagby and following the procedure to complain.  The jury's award of punitive damages, therefore, was erroneous.  The purpose of the good faith defense is to enable a company with anti-discrimination policies in place to

59

show that it "never acted in reckless disregard of federally protected rights."

*Kolstad*, 527 U.S. at 544.  Plaintiff failed to establish that Arthur Steber, in

discharging Plaintiff, did so when he believed Bagby would be violating

Plaintiff's federally protected rights.  This state of mind is the crucial

element predicate to an award here of punitive damages, as set forth by the

*Kolstad* court:

> Moreover, § 1981a's focus on the employer's state of mind gives some
> effect to Congress' apparent intent to narrow the class of cases for
> which punitive awards are available to a subset of those involving
> intentional discrimination. The employer must act with "malice or
> with reckless indifference *to the [plaintiff's] federally protected
> rights.*" § 1981b(1) (emphasis added). The terms "malice" or "reckless
> indifference" pertain to the employer's knowledge that it may be
> acting in violation of federal law, not its awareness that it is engaging
> in discrimination.

*Kolstad, supra* at 527 U.S. at 533.

Accordingly, based on the Supreme Court's test, the degree of

reprehensibility of Bagby's alleged conduct cannot in any sense justify a

$500,000 punitive damages award, and such award is due to be reduced.

### 2. The Ratio Of Punitive Damages To Actual Harm Inflicted Is Excessive

The ratio of punitive damages to actual harm allegedly inflicted is

much too large to support the punitive damages award.  The compensatory

damages awarded was a combination of back pay and mental anguish

damages.  The total of $54,321.18 has a ratio of to 9.2 to the $500,000.00

punitive damages award.  Plaintiff failed to show any racial animus on the part of Arthur Steber who made the decision about his employment. Additionally, the facts do not show any egregiousness for which a large ratio of compensatory to punitive damages may be appropriate. Accordingly, the punitive damage award must be remitted to a reasonable amount.

Although the Supreme Court has not expressed a bright-line ratio that *per se* establishes a due process violation, it has noted that "in practice, few awards exceeding a single-digit ratio between punitive and compensatory damages, to a significant degree, will satisfy due process." *Campbell*, 538 U.S. at 425.  In fact, the *Campbell* Court cited both *Gore* and *Pacific Mutual Life Insurance Company v. Haislip*, 4299 U.S. 1 (1991) as instances where the Court determined that "an award of more than four times the amount of compensatory damages might be close to the line of constitutional impropriety." *Campbell*, 538 U.S. at 425.

In this case, where the punitive damages award is nearly ten times the appropriate measure of compensatory damages, the "line of constitutional impropriety" has been crossed, and the punitive damages award is due to be remitted.

### 3.   Comparable Sanctions Do Not Support The $500,000 Award

Consistent with *Gore's* dictate to review punitive damage awards in light of comparable civil or criminal sanctions for the same conduct, this Court is due to remit the punitive damages awarded to the Plaintiff in light of recent punitive awards in retaliation cases in other Alabama federal courts.  In chronological order, Bagby references the following cases in Alabama federal courts within the past five years, all with punitive damage verdicts drastically less than that awarded in the instant action:  *Watson v. Energy Dispatch*, (N.D. Ala., CV-02-WMA-2284-S, April 28, 2005): $100,000 in punitive damages to a truck driver who was allegedly terminated in retaliation for a complaint of racial discrimination; *Herawi v. Alabama Department of Forensic Sciences*, (M.D. Ala., CV-02-T-1360-N, April 7, 2004):  $0 in punitive damages to an Iranian plaintiff who claimed that she was terminated three days after her last complaint of national origin discrimination; *Harris v. Hanna Steel Corporation*, (N.D. Ala., CV-01-UWC-01853-W, October 24, 2003):  $10,000 in punitive damages based on the plaintiff's allegation that his employer terminated him in retaliation for complaints of a racially hostile work environment; *Ward v. Wal-Mart*, (N.D. Ala., CV-00-IPJ-1751-J, November 15, 2001):  $0 in punitive damages in response to the plaintiff's contention that Wal-Mart retaliated

against her after she made complaints of disability discrimination.  As these cases demonstrate, the $500,000 punitive damages award in this case is out of sync with awards for comparable conduct in cases within this jurisdiction.  Consequently, the punitive damages award is due to be remitted.

### V.  CONCLUSION

For the foregoing reasons, considered separately as well as in their cumulative effect, the Court should enter judgment as a matter of law on the wrongful discharge and retaliation claims in favor of Bagby, or in the alternative should order a new trial, or direct remittitur.

Respectfully submitted,

s/ Marion F. Walker
Marion F. Walker (ASB-0734-L73M)
Steven M. Stastny (ASB-7803-S71S)
FORD & HARRISON LLP
2100 Third Avenue North, Suite 400
Birmingham, AL 35203
Telephone: (205) 244-5900
Facsimile:  (205) 244-5901
E-Mail:      sstastny@fordharrison.com
E-Mail:      mwalker@fordharrison.com

**CERTIFICATE OF SERVICE**

I hereby certify that on the 7th day of July, 2006, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

> Cynthia Forman Wilkinson, Esq.
> Wilkinson Law Firm, P.C.
> New South Federal Building, Suite 811
> 215 Richard Arrington, Jr. Blvd.
> Birmingham, AL 35203
>
> Larry R. Mann, Esq.
> New South Federal Building, Suite 701
> 215 Richard Arrington, Jr. Blvd.
> Birmingham, AL 35203

> s/ Marion F. Walker
> Marion F. Walker (ASB-0734-L73M)
> Steven M. Stastny (ASB-7803-S71S)
> FORD & HARRISON LLP
> 2100 Third Avenue North, Suite 400
> Birmingham, AL 35203
> Telephone: (205) 244-5900
> Facsimile:  (205) 244-5901
> E-Mail:     sstastny@fordharrison.com
> E-Mail:     mwalker@fordharrison.com

Birmingham:13147.1